ARTHUR T. SAFFORD & others vs. CITY OF LOWELL & others.

Middlesex.     November 17, 1925. — March 2, 1926.

Present: RUGG, C.J., PIERCE, WAIT, & SANDERSON, JJ.

*Lowell. Municipal Corporations*, Plan B charter. *Statute*, Repeal.
*Equity Jurisdiction*, Suit by ten taxable inhabitants under G. L. c. 40,
§ 53, Laches. *Words*, "Special emergency," "More or less."

When the city of Lowell adopted Plan B form of charter, the provisions
of §§ 30, 31, of its former charter, St. 1921, c. 383, were superseded
by the provisions of G. L. c. 43, §§ 28, 45, and became of no effect.

In April, 1925, when the city of Lowell was under the Plan B form of
charter, the mayor determined that an "extreme emergency" called for
immediate repair of streets and made a requisition upon the purchasing
agent to furnish a quantity of a certain material. The purchasing
agent, without calling for bids or public advertisement, in the name of
the city made an agreement under seal with a contractor to furnish
two hundred tons of the material "more or less," at a price per ton
which amounted to more than $200 for the bulk. In a suit in equity
by ten taxable inhabitants under G. L. c. 40, § 53, to prevent payments
under the contract, the defendants contended that the contract was
justified because it was made in a "special emergency involving the
health or safety of the people and their property." A master who
heard the suit, after reciting findings as to the condition of the streets,
found that no such case "of special emergency" existed. It appeared
that, as early as February, it had been evident what the condition of
the streets in April would be if nothing were done. *Held*, that

(1) The language used in the statute does not apply to a condition
which may clearly be foreseen in abundant time to take remedial action
before serious damage to the health or to the safety of persons or
property is likely to occur;

(2) As a matter of law, no special emergency within the language
of the statute confronted the defendants in April, 1925.

(3) The contract was unlawful and a decree should be entered
enjoining payments by the city thereunder.

The alleged contract above described was entitled "Articles of Agreement,"
and it bore the seal of the city and the seal of the contractor. In it the
contractor agreed and promised to furnish "two hundred tons, more or
less" of the material and "in consideration" of the promise and agree-
ment by the contractor the city promised and agreed to pay the con-
tractor "for the above mentioned material and articles, delivered and
accepted the prices set forth in the list attached." *Held*, that the
instrument was a contract and, being for more than $800, was within
the terms of G. L. c. 43, § 28.

A finding by a master that there had been no laches in the bringing of the
suit above described could not be said to be wrong where it appeared

that the suit was brought thirty-five days after the execution of the contract, when $7,896.88 had been paid to the contractor at $10.50 per ton, and material amounting to $11,873.16 had been delivered and was not paid for, and, although any citizen could have observed that material was being furnished and applied in amounts greater than the city plant could supply, there was no evidence at what time any of the plaintiffs first learned of the contract.

Good faith on the part of the officials of the city in the making of the contract above described was no bar to the suit.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Middlesex by twelve taxable inhabitants of Lowell on May 20, 1925, under G. L. c. 40, § 53, to prevent payments to the defendant George P. Legrand under the provisions of the contract described in the opinion.

The suit was referred to a master. No objections nor exceptions to the report were filed and, by order of *Braley,* J., an interlocutory decree was entered confirming the report. The suit then was reported to this court by the single justice for determination upon the pleadings, the master's report and the interlocutory decree confirming the report.

The case was submitted on briefs.

*W. D. Regan & A. C. Spalding,* for the plaintiffs.

*P. J. Reynolds,* City Solicitor, *J. J. Hogan & W. A. Hogan,* for the defendants.

WAIT, J. The plaintiffs are taxpayers of the city of Lowell who bring their bill under G. L. c. 40, § 53, to restrain an expenditure of money by the city. The defendants, other than the city, are the mayor, treasurer, auditor, purchasing agent, and the members of the board of public service of Lowell, with one Legrand.

The cause was heard by a master and is reported to us for determination upon the pleadings, the report of the master and an interlocutory decree confirming the report. The facts set forth in the report of the master, so far as they are purely questions of fact, are not disputed.

Prior to January, 1922, the charter of the city was St. 1921, c. 383; but, in 1921, the citizens adopted a Plan B charter under G. L. c. 43, which went into effect in January, 1922. The board of public service was constituted under

St. 1921, c. 383, but continued to function in the construction, repair, care and maintenance of the streets and highways of the city after the Plan B charter went into effect. Early in 1925 the streets were in great need of immediate repair and the only practical material for speedy temporary repair was "cold patch" a mixture of broken stone and a petroleum product. After an examination of the streets made some time in March, the mayor determined that an "extreme emergency" existed therefor and, with his approval, the board of public service, on April 15, 1925, made requisition upon the purchasing agent to "furnish for the use of the Street Department . . . 200 tons, more or less, of cold patch material, all mixed to be delivered on the job in such quantities, and such sizes, and at the places designated by the Supt. of Streets." Specifications were to be furnished by the city engineer. The material was to be purchased of "Indian Head Const. Co." the name under which Legrand did business. The requisition contained also a list of prices per ton which varied with the place of delivery, and with the number of tons per day called for by the city. Pursuant to this requisition written "Articles of Agreement" were executed on April 15, 1925, by "Indian Head Construction Company by George P. Legrand" and "The City of Lowell By Edward J. Donnelly Purchasing Agent." The seal of the city was affixed and Legrand also attached a seal to his signature. These articles witnessed "That . . . [Legrand did] promise and agree at his own expense and risk to furnish and deliver in said City of Lowell at such times and places as shall be designated by said Purchasing Agent the following Two hundred tons, more or less, Cold Patch Material" as set out in the requisition; and "in consideration" of the foregoing promise and agreement of Legrand, the city "promises and agrees to pay to" Legrand "for the above mentioned material and articles, delivered and accepted the prices set forth in the list attached."

Delivery under this agreement began at once; and one thousand, nine hundred twelve and twenty-four hundredths tons of "cold patch" were delivered, accepted and used on

the streets at $10.50 per ton. This bill in equity was filed on May 20, 1925. Before that date $7,896.88 was paid by the city to Legrand and $11,873.16 remained unpaid.

No public advertisement for bids for the material was made.

The master set out in his report in much detail a description of the condition of the streets and of the causes therefor. He found, so far as it was a question of fact, that no "extreme emergency" or case "of special emergency involving the health or safety of the people or their property" existed.

The defendants justify their action in neglecting to call for bids for these materials by public advertisement, under St. 1921, c. 383, §§ 30 and 31. Section 30 provided for a board of public service which among other duties was given charge of the construction, repair and care of streets, and in Part 11, required public advertisement and competition for "All contracts for more than five hundred dollars." Section 31 prescribes the duties of the purchasing agent, and provides that "The purchasing agent shall purchase and contract for all materials or supplies for all departments of the city, subject to approval by the mayor. He shall make no purchase of materials or supplies, except in cases of extreme emergency, exceeding in cost a sum of fifty dollars without first calling for bids thereon by public advertisement . . . . The entire unit of quantity specified by the requisition shall first be submitted to competitive bids . . . . No splitting of a requisition to avoid calling for bids as specified in this section shall be lawful, unless in cases of extreme emergency . . . . The mayor shall be the sole authority to determine a case of extreme emergency. . . ."

These sections they contend were in force, notwithstanding the change to the Plan B charter, by virtue of G. L. c. 43, § 5, which enacts that " . . . the powers and duties of the officers and employees of any city adopting any of the plans provided for in this chapter . . . shall remain as constituted at the time of the adoption of such plan . . . " until superseded under chapter 43. They assert that no provision of law has superseded them. G. L. c. 43, § 28, which is applicable to all forms of charter adopted under chapter 43

(G. L. c. 43, § 45), provides that "No contract for construction work or for the purchase of apparatus, supplies or materials, whether for repairs or original construction, the estimated cost of which amounts to two hundred dollars or more, except in cases of special emergency involving the health or safety of the people or their property, shall be awarded unless proposals for the same have been invited by advertisements . . . . No bid or contract shall be split or divided for the purpose of evading any provision of this chapter."

The contentions are unsound. The law is settled that "Whenever one of the plans set forth in . . . [G. L. c. 43] is adopted by the voters of any city, it becomes effective as a new charter for municipal administration. All that has gone before concerning the same subject matter is revoked except as preserved by the new charter." *Cunningham* v. *Mayor of Cambridge*, 222 Mass. 574, 577. *Mayor of Cambridge* v. *Cambridge*, 228 Mass. 249. *Dooling* v. *City Council of Fitchburg*, 242 Mass. 599, 602. A subject matter dealt with by St. 1921, c. 383, §§ 30, 31, is the requirement for public advertising for bids in purchasing or contracting for materials and supplies for street repairs. G. L. c. 43, § 28, deals with the same subject matter. It is immaterial that §§ 30 and 31 also dealt with other things. When Lowell adopted Plan B, it made § 28 operative as a charter provision; and, thereby, it revoked and superseded so much of §§ 30 and 31 as dealt with the advertising for bids. They furnish no defence. It is, therefore, unnecessary to discuss whether the acts of the defendants were justifiable even under St. 1921, c. 383. We need not determine the meaning of "extreme emergency" as there used; or whether the mayor's determination can be reviewed.

The defendants contend, however, that under G. L. c. 43, § 28, the action taken was lawful. That section excepts from the requirement for public advertisement "cases of special emergency involving the health or safety of the people or their property." The defendants assert that such an emergency existed. The master has found that many streets were defective and to some extent dangerous, but

none were impassable, none were closed to travel, and no warnings were displayed. We need not recite his findings in detail. They show that while danger of injury to person and property existed, the conditions did not differ except in degree from those ordinarily to be expected after a winter when little snow has fallen to protect the surface of the ways, and that in degree the difference was rather in the larger number of opportunities for accident than in the greater danger of serious injury. The conditions did not occur suddenly or unexpectedly. None of the causes was unusual. As early as February it was evident what the condition in April would be, if nothing were done. When the street surface begins to disintegrate, rapid action is necessary to prevent resulting damage from spreading quickly.

It would be to misuse language to describe the condition which existed April 15 as "a special emergency involving the health or safety of the people or their property." Without attempting an exact or all inclusive definition, it is manifest that that language does not apply to a condition which may clearly be foreseen in abundant time to take remedial action before serious damage to the health or to the safety of person or property is likely to occur. Without doubt, lack of foresight and failure to take proper precaution to meet contingencies which any prudent person would anticipate, might occasion a condition which would jeopardize public health and safety, and to which the words of the statute would be applicable. It would be remarkable, however, if the legislators used them to describe such a situation. It is not to be supposed that they intended to make it possible for municipal officers to avoid advertising for bids for public work by merely delaying to take action to meet conditions which they can foresee until danger to public health and safety has become so great that the slight further delay caused by advertising will entail public calamity. No such imminent danger of calamity existed here.

In so far as it was question of fact, the master's finding must stand. As matter of law no special emergency within the language of the statute confronted the defendants on April 15, 1925. See *Merrill* v. *Lowell*, 236 Mass. 463, 466.

There is no merit in the defendants' contention that the arrangement with Legrand did not amount to a contract within the provision of the statute. The parties describe it as an agreement. It is under seal. It recites a consideration. It indicates a purpose to bind both parties. It is not a bilateral contract which fails because one of the promises imposes no detriment on the promisor and confers no benefit on the promisee. Williston, Contracts, § 104. *Burgess Sulphite Fibre Co.* v. *Bloomfield,* 180 Mass. 283. It does not merely fix a price and permit the city to refuse to purchase anything. It does not leave the city free to act as it pleases. It is a legally binding contract for two hundred tons, more or less, of cold patch material. The words "more or less" do not render the agreement too indefinite for enforcement. They qualify "a representation or statement of an absolute and definite amount, so that neither party to a contract can avoid it or set it aside by reason of any deficiency or surplus, occasioned by no fraud or want of good faith, if there is a reasonable approximation to the quantity specifically named as the subject of the contract." *Cabot* v. *Winsor,* 1 Allen, 546, 550. They do not open the door to proof of circumstances showing an agreement to deal for a different quantity. *Cabot* v. *Winsor, supra. Kelley* v. *Bowker,* 11 Gray, 428. See *Freeman* v. *Hedrington,* 204 Mass. 238. *National Wholesale Grocery Co. Inc.* v. *Mann,* 251 Mass. 238. It was thus within the terms of the statute which applies to a purchase or contract when the estimated cost amounts to $200 or more. On the facts before us, it is not necessary to decide whether the statute would apply had no amount been fixed and only a price agreed upon. We do not mean to intimate that the statute can successfully be evaded by an agreement in such a form.

The master's finding that there was no laches to be attributed to the plaintiffs, in so far as it was matter of fact, is final. His findings of the subsidiary facts as matter of law justify the conclusion he reached. There was no evidence at what time any of the plaintiffs first learned of the contract; and although any citizen could have observed

that "cold patch" was being furnished and applied in amounts greater than the city plant could supply, the lapse of thirty-five days between the execution of the contract and the filing of the bill is not such laches as precludes the petitioners from maintaining their petition.

The master has found that the defendants acted in good faith, and that the contract, which has been fully carried out, was for the benefit of the city. This, however, is no bar to this proceeding. The Legislature has established a policy which it is the duty of municipal officials to observe. *Morse* v. *Boston*, 253 Mass. 247.

The plaintiffs are entitled to a decree. The details may be settled by a single justice.

*So ordered.*