GEORGE H. BURT & others *vs.* MUNICIPAL COUNCIL OF TAUNTON & others.

Bristol.    October 29, 1929. — July 1, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Municipal Corporations,* By-laws and ordinances, Officers and agents. *Equity Jurisdiction,* Suit by ten taxable inhabitants. *Taunton.*

Allegations in a bill in equity under G. L. c. 40, § 53, by ten taxpayers of Taunton against municipal officers were in substance that by a valid and subsisting order of the municipal council all committees of the municipal council were forbidden to make purchases in an amount exceeding $500 without calling for sealed proposals after specified advertisement, and all contracts were required to be awarded to the lowest responsible bidder; that no action had been taken by the council to set such order aside under a rule that required a two-thirds vote to accomplish that purpose; that an appropriation of $13,500 had been made for a pump for the fire department and bids had been called for by a committee; that the lowest bid was $11,975 and the highest $13,500; that the committee had referred the bids to the council without recommendation, and the council had referred it back to the committee with authority to purchase a motor pump without regard to the amount of the bid or the type of the pump; that two of the three members of the committee had openly asserted that they were in favor of and would vote for the purchase from one of the high bidders; that the lowest bidders were responsible and of good reputation, and that the apparatus they manufactured was of high grade and in general and satisfactory use; and that the defendants were about to expend money in violation of the municipal order and were acting in bad faith and not for the best interests of the city. A demurrer was overruled. Upon appeal, it was *held,* that

(1) The allegations of the bill were sufficient to show that the proposed expenditure of public money was impending and that it was not merely anticipatory;

(2) The vote of the council referring the bids back to the committee with authority to purchase was a vote to expend money;

(3) The money for making the purchase was available on the allegations of the bill;

(4) The order of the municipal council requiring all contracts in excess of $500 in amount to be let to the lowest responsible bidder was within the competency of the municipal council;

(5) That order was something more than a mere rule of a deliberative assembly, which might be modified or waived at will and which governed the course of its parliamentary business or was intended as

a security against hasty action; it was a provision of substance to protect the financial interests of the city by preventing favoritism in awarding contracts and to put a limitation on the otherwise very broad powers of the city officers to bind the city by contract;

(6) The last vote of the council was invalid;

(7) The allegations of intent on the part of the defendants to make the purchase under the authority of the vote, and of their bad faith, made out, in view of all the circumstances, a case for relief under the statute; and the demurrer properly was overruled.

BILL IN EQUITY under G. L. c. 40, § 53, filed in the Supreme Judicial Court for the county of Bristol on June 18, 1929, and afterwards amended.

Several of the defendants demurred. The demurrers were heard by *Carroll*, J., and were overruled. The single justice thereupon reported the suit for determination by the full court.

*H. F. Hathaway*, (*E. A. Hathaway* with him,) for the defendants.

*R. J. Regan*, for the plaintiffs.

RUGG, C.J.   This is a petition under G. L. c. 40, § 53, by more than ten taxpayers of the city of Taunton against the municipal council, the chief engineer of the fire department and the city treasurer of that city. In brief, the allegations of the petition as amended are that, by valid and subsisting order adopted by the municipal council, all committees of the municipal council were forbidden to make purchases in an amount exceeding $500 without calling for sealed proposals after specified advertisement, and all contracts were required to be awarded to the lowest responsible bidder; that in May, 1929, an appropriation of $13,500 was made by the city for the purchase of a motor driven pumper for the fire department; that after the rejection of certain bids the committee on fire and wires called for new bids by advertisement and submitted to bidders specifications in part of the tenor following: "These specifications are not drawn to cover this apparatus in detail, only to give the bidder an outline of what will be required in a general way. Each bidder must furnish a complete set of specifications in detail as to his apparatus."; that bids varying from $11,975, the lowest, to $13,500, the

highest, were submitted to and opened by the committee, which reported to the municipal council without recommendation as to acceptance of any of the bids, and that by vote of five members constituting a majority of the municipal council the matter on June 11, 1929, was referred back to the committee with authority to purchase a motor pumper without regard to the amount of the bid or the type of the pumper; that two of the three members of the committee have openly asserted that they were in favor of and would vote for the purchase from one of the high bidders; that the low bidders were responsible, of good reputation and manufacturers of a high grade pumper in general and satisfactory use; that the defendants are about to expend money and incur obligations in the purchase of a motor pumper from the highest bidder in direct violation of the binding order of the municipal council, and that the defendants are acting in bad faith and not for the best interests of the city. Certain of the defendants demurred, assigning several causes, which so far as argued will be discussed.

The allegations of the bill are sufficient to show that the proposed expenditure of public money is impending and that it is not merely anticipatory. *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258. *Morse* v. *Boston,* 253 Mass. 247, 255. *Reilly* v. *Selectmen of Blackstone,* 266 Mass. 503, 511. *Dowling* v. *Board of Assessors,* 268 Mass. 480. The vote of the municipal council of June 11, 1929, was a vote to expend money. *Prince* v. *Crocker,* 166 Mass. 347, 358. *Loring* v. *Westwood,* 238 Mass. 9. No contention has been made that there was any invalidity in the order making appropriation for the purchase of the motor driven pumper. A reasonable presumption is to be made in favor of the action of the municipal council. *Bryant* v. *Pittsfield,* 199 Mass. 530, 532. The money for making the purchase was available on the allegations of the bill.

The order of the municipal council requiring all contracts in excess of $500 in amount to be let to the lowest responsible bidder was in force when the vote of June 11, 1929, was passed, pursuant to which it is alleged that the defendants

intend to act, and when the bill was filed.   That order was within the competency of the municipal council.   It was a measure calculated to regulate the exercise of the power to make contracts and the conduct of the executive and administrative business of the city.   See St. 1882, c. 211, §§ 9, 15;   St. 1909, c. 448, § 11.   *Oliver* v. *Gale*, 182 Mass. 39. *Clarke* v. *Fall River*, 219 Mass. 580, 584, 585.   That order is something more than a mere rule of a deliberative assembly governing the course of its parliamentary business or intended as a security against hasty action which may be modified or waived at will.   *Holt* v. *City Council of Somerville*, 127 Mass. 408, 411.   *Byfield* v. *Newton*, 247 Mass. 46, 55 and cases cited.   It is a provision of substance partaking of the nature of a rule for the conduct of the general business affairs of the city.   Its purpose is to protect the financial interests of the city by preventing favoritism in awarding contracts and to put a limitation on the otherwise very broad powers of the city officers to bind the city by contract.   Its tendency is to give full publicity to proposed city contracts, to establish genuine and open competition upon the same footing after proper advertisement, and to insure honest methods of letting contracts.   All these steps conduce to guard the public welfare.   The sufficiency of the advertisement calling for bids has not been assailed and no intimation is made concerning that point.   It is alleged in the bill that under the rules and orders of the city council no such order shall be suspended unless two thirds of the members present consent, and shall not be repealed or amended except in a prescribed manner.   There was no attempt to conform to these provisions with respect to the order as to letting contracts.   Statutes of a tenor similar to this order and designed to accomplish the same result have been rigidly enforced.   *Warren* v. *Street Commissioners of Boston*, 181 Mass. 6.   *Morse* v. *Boston*, 253 Mass. 247.   *Safford* v. *Lowell*, 255 Mass. 220.   No reason is perceived why similar effect should not be given, in the circumstances here disclosed, to the order of the municipal council.   It follows that the order here in question, not having been amended, suspended or repealed, was in full force.   That being so, the simple vote of

the municipal council of June 11, 1929, authorizing the committee to purchase the motor pumper without regard to the bids received or the type of motor, was invalid.

The allegations of intent on the part of the defendants to make the purchase under the authority of the vote, and of their bad faith, make out in view of all the circumstances a case for relief under the statute.

*Order overruling demurrer affirmed.*