ALLAN E. GIFFORD & others *vs.* COMMISSIONER OF PUBLIC
HEALTH & others
(and a companion case[1]).

Suffolk.   February 6, 7, 1952. — April 8, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Public Works. Contract*, With Commonwealth, For public work, Bid-
ding for contract, Subcontract. *Commonwealth*, Contracts. *Equity
Pleading and Practice*, Appeal. *Quasi Judicial Tribunal. Certiorari.
Evidence*, Competency. *Words*, "Approval."

Evidence to show that in a bid for public construction work submitted by
a general contractor under the procedure established by G. L. (Ter.
Ed.) c. 149, §§ 44A–44D, as amended, the cost of certain materials
was included in item 1 covering the general contractor's work rather
than in item 2 covering the subcontractors' work was incompetent.

A general contractor for public construction work, who under the pro-
cedure established by G. L. (Ter. Ed.) c. 149, §§ 44A–44D, as amended,
received from a subcontractor a subbid stating a certain amount with
a notation that if "a performance bond will be required, add" a speci-
fied percentage of such amount, should have added such percentage
in preparing his own bid where the awarding authority had reserved
the right to demand performance bonds of subcontractors; it was im-
material that the awarding authority was to receive from the general
contractor a performance bond in the full amount of the general con-
tract or that there might have been a custom that performance bonds
were not required of subcontractors.

In bidding for public construction work under the procedure established
by G. L. (Ter. Ed.) c. 149, §§ 44A–44D, as amended, noncompliance
with the statute by a general contractor in that he included in item 2
of his bid covering the work of subcontractors smaller sums for cer-
tain subcontractors than the sums specified in their subbids as sub-
mitted to him and filed with the awarding authority, whereby his
total bid, which with the proper sums for such subcontractors in-
cluded would have been higher than that of another bidder who named
the same subcontractors and included the proper sums for them in his
item 2, was brought below the total bid of the other bidder, precluded
the awarding authority from determining that the noncomplying bid-
der was "lowest" or awarding him the contract.

[1] The companion case is J. Slotnik Company *vs.* Massachusetts Public
Building Commission.

An appeal in a suit in equity should not be dismissed on the ground that no order for preparation of the appeal papers was given within ten days after the filing of the appeal as required by G. L. (Ter. Ed.) c. 231, § 135, where the trial judge within such ten days ordered a consolidated appeal record in the suit and in another case in which an appeal had been filed subsequent to the appeal in the suit and where an order for preparation of the consolidated record was given after the judge's order and within ten days after the filing of the later appeal.

The Massachusetts public building commission acted in a quasi judicial capacity in approving a contract for construction of a public building for the Commonwealth pursuant to G. L. (Ter. Ed.) c. 92A, § 2, inserted by St. 1947, c. 466, § 3, and certiorari lay to correct an error of law on the part of the commission in its determination, necessarily included in its approval, that the contract had been properly awarded to the "lowest responsible and eligible bidder" in conformity to G. L. (Ter. Ed.) c. 149, § 44A, as amended.

PETITION, filed in the Superior Court on October 24, 1951, under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157, seeking in substance that the respondent commissioner of public health be enjoined from "awarding, entering into, proceeding with or carrying out" a certain contract between the Commonwealth and the respondent John Bowen Co., Inc.; that the respondent Massachusetts public building commission be enjoined from approving such contract; that the respondent Treasurer and Receiver General be enjoined from expending any public money on account of such contract; that the respondent John Bowen Co., Inc., be enjoined from receiving any public money on account of such contract; and that the court determine that "the incurring of obligations" through such contract "would be . . . unlawful and illegal and, in particular, in violation of" G. L. (Ter. Ed.) c. 149, §§ 44A–44D. Also a

PETITION for a writ of certiorari, filed in the Superior Court on October 25, 1951.

The cases were heard by *Good*, J.

*L. H. Weinstein*, (*J. Hunt, H. L. Berman*, & *J. Preston, Jr.*, with him,) for the petitioners Gifford and others.

*J. W. Burke*, (*J. J. Monaghan* with him,) for the respondent John Bowen Co., Inc.

*E. C. Park*, for the petitioner J. Slotnik Company.

*C. H. Walters,* Assistant Attorney General, for the respondents commissioner of public health and others.

WILKINS, J.   These two cases, which were tried together, present the same principal question: Was John Bowen Co., Inc., the "lowest responsible and eligible" general bidder on a contract for the construction of a chronic diseases hospital in Boston, a project subject to G. L. (Ter. Ed.) c. 149, §§ 44A–44D, inserted by St. 1939, c. 480, as amended?[1] The contract was awarded by the department of public health (hereinafter called the department) with the approval of the Massachusetts public building commission[2] (hereinafter called the commission) to John Bowen Co., Inc. (hereinafter called Bowen).   It was agreed in the court below that a finding might be made that J. Slotnik Company (hereinafter called Slotnik) was a "responsible and eligible" bidder within the meaning of § 44A, as amended; and that at a hearing held October 15, 1951, before the commission when Slotnik offered to introduce such evidence, the members of the commission stated that it would be unnecessary, as they proposed to limit themselves to the sole issue whether Slotnik or Bowen was the lowest bidder, and that they had never made a formal determination that Slotnik was not a "responsible and eligible" bidder.   On this record it is too late to make an argument before us in either case that Slotnik was determined to be not "responsible and eligible" even if its bid was "lowest."

---

[1] Section 44A, as appearing in St. 1941, c. 699, § 1, reads: "Every contract for the construction . . . of any public building by the commonwealth . . . estimated to cost more than five thousand dollars . . . shall be awarded on the basis of competitive bids to the lowest responsible and eligible bidder.   The term 'lowest responsible and eligible bidder', as used herein and in sections forty-four B to forty-four D, inclusive, shall mean the bidder whose bid is the lowest of those bidders possessing the skill, ability and integrity necessary to the faithful performance of the word [*sic*] in case no substitution of sub-contractors is made in accordance with section forty-four C, or whose original or adjusted bid is the lowest of such bidders in the event of such substitution or substitutions. . . . The awarding authority shall reserve the right to reject any or all bids, if it be in the public interest so to do."

[2] G. L. (Ter. Ed.) c. 6, §§ 61–62, inserted by St. 1947, c. 466, § 2; c. 92A, inserted by St. 1947, c. 466, § 3.

### The First Case.

Not less than twenty-four (to wit, twenty-eight) taxable inhabitants of the Commonwealth, not more than six of whom are from any one county, bring this petition under G. L. (Ter. Ed.) c. 29, § 63, inserted by St. 1937, c. 157. The respondents are the commissioner of public health, the commission, the Treasurer and Receiver General, and Bowen.

In August, 1951, the department publicly invited sealed proposals for the construction of the hospital in accordance with certain plans and specifications. In the proposal form the department designated twenty-seven subcontractors to be included by each general contractor in Item 2 of his bid. Pursuant to, and in the language of, G. L. (Ter. Ed.) c. 149, §§ 44C (A), (B), inserted by St. 1939, c. 480, the notice to contractors provided: "Bids from general contractors shall be for the complete project as specified and shall include the names of all principal and such minor sub-contractors as are designated in the proposal form, and the general contractor shall be selected on the basis of such bid. Each bid shall be divided into two items: Item 1, covering all the work of the general contractor, being all work not covered in Item 2. Item 2, covering the work of such sub-contractors, and the estimates therefor, as are listed in the proposal form for general contractors, attached thereto. . . . No sub-bid shall be considered in the final selection of sub-bidders ... . except those filed with the awarding authority." The notice to contractors also contained the following: "No amount shall be included by a bidder in either Item 1 or Item 2 of the proposal form for the work to be performed under an item or items listed in Item 2 on which no recorded sub-bids have been received, and the bids of general contractors will be compared only on such basis."

Other provisions of § 44C (B), as amended, are: "All principal and such minor sub-contractors as are designated in the proposal form shall deliver or mail to the awarding authority record copies of all bids sent by them to the general contractor. . . . No recorded sub-bids shall be opened

by the awarding authorities until after the selection of the general contractor. No sub-bid shall be considered in the final selection of sub-bidders, as hereinafter described, except those filed with the awarding authority as above provided." Section 44C (C) states: "The names of all subbidders who filed their bids with the awarding authority shall be mailed on date of receipt to the general contractors bidding on the project and no sub-bidder not included on such list shall be used by the general contractor in his bid."

As later extended, the filing time for subbids closed on October 2, 1951, and for bids on October 5, 1951. Many subbids were filed for twenty-six[1] of the twenty-seven subcontract operations, and the general bidders were notified of the list of names of those subbidders. There were four general bids. These were publicly opened and read on October 5, 1951. The two lowest bids may be summarized as follows:

|          | Item 1       | Item 2        | Total          |
|----------|--------------|---------------|----------------|
| Slotnik  | $5,233,920   | $5,945,765    | $11,179,685    |
| Bowen    | 5,255,704    | 5,923,822.25  | 11,179,526.25  |

It thus appeared that on Item 1, which was the work to be done by the general contractor, Slotnik's bid was lower by $21,784. But on Item 2, which was the work to be done by subcontractors, Bowen's bid was lower by $21,942.75, notwithstanding that Slotnik and Bowen had named the same twenty-six subbidders and had received the same subbids from them. On October 22, 1951, Bowen, whose total bid seemed to be lower by $158.75, was recommended by the department as the "lowest responsible and eligible bidder," and on October 24 the commission voted to approve the award of the contract to Bowen.

In the meantime on October 11, 1951, the recorded subbids, which had been filed with the department, were opened and read. It then could be seen that the recorded subbids of twenty-one subcontractors named by both Slotnik and Bowen were identical with the estimates submitted by

---

[1] No subbids were filed on one of the twenty-seven subcontract operations.

Slotnik and Bowen, and that, apart from two minor variations, the discrepancy as to Item 2 was the result of three differences: (1) The painting subbid of Johnson-Foster Company, Inc., as filed was $135,600. Slotnik used this amount, but from it Bowen deducted $20,000. (2) and (3) Albre Marble & Tile Company, Inc., filed subbids for marble and tile respectively of $42,400 and $243,000 with a notation in each case, "If a performance bond will be required, add ¾ of 1% of the above proposal to the contract sum." Slotnik added the amounts for the performance bonds, but Bowen did not. If the correct amount of the painting subbid was $135,600 and not $115,600, or if the correct amount of the subbids for either tile or marble required the addition of ¾ of 1%, Slotnik's bid was low for the entire contract as well as for Item 1.

The notice to contractors signed by the commissioner and the special form for general bidders (prepared by the department and signed by Slotnik and Bowen) provided that a subbidder may be required by the general contractor or the awarding authority to furnish a performance bond. The same special form also contained the provision: "The undersigned agrees that the list of subbidders represent bona fide bids based on the plans and specifications, made in good faith to the bidder, and are hereby submitted and that, if the undersigned is awarded the contract, they will be used for the work indicated, at the amounts stated, if satisfactory to the awarding authority as provided in the general conditions."

The foregoing facts are found by us from the statements of counsel at the hearing in the court below and from documents in evidence. The judge filed a paper containing findings, rulings, and an order for decree. The petitioners appealed from a final decree dismissing the petition. The evidence is reported.

We here summarize certain evidence relating to the difference of $20,000 in the use made by Slotnik and that made by Bowen of the Johnson-Foster painting subbid. The original specifications called for the subcontractor to

furnish and to hang fabric wall covering to be selected by the architect from samples submitted. By an addendum dated September 14, 1951, the requirement of the architect's approval was omitted. Instead a provision was substituted requiring the "contractor" to include, as an "allowance," in his proposal the sum of $20,000 for fabric wall covering to be purchased as directed by the architect, any difference between the allowance and actual cost to be added to or deducted from the contract price, the Commonwealth reserving the right to deduct the entire allowance and itself to deliver the fabric wall covering, the "contractor" thereafter to "be responsible for all fabric wall covering until completion of the contract." On October 5, 1951, after the general contractors' bids were opened, Johnson-Foster Company sent Bowen a letter bearing date of October 2, 1951, which read: "This is to confirm our telephone conversation of today stating that we have included in our estimate the sum of $20,000 for the furnishing of Fabron wall covering. The actual cost for doing the painting, exclusive of the furnishing of the Fabron wall covering, in accordance with plans and specifications amounts to $115,600." This information was given only to Bowen and was not filed with the department.

The trial judge ruled that the requirements of c. 149, §§ 44A–44D, as amended, were complied with by the commission and by Bowen. He made so called findings that there were no "irregularities" by Bowen in its treatment of the subcontracts for marble, tile, and painting; that with respect to the marble and tile bids Bowen "had the right to disregard the suggestion that an additional three quarters of one per cent be added to the bids if performance bonds were required"; and that with respect to the bid for painting "the estimated cost of $20,000 for fabron wall covering was not omitted by the Bowen Co., but was carried in Item 1 where it properly belonged." Referring to the addendum of September 14, 1951, the judge also stated, "when these changes in the original came to the attention of the painting subcontractor, he gave notice to the Bowen

Co. that his subbid was erroneous to the extent of $20,000, the amount he had charged for fabron wall covering. This change was carried by the Bowen Co. in Item 1 as its own charge and not in Item 2 as a painting subcontractor's charge. The end result in dollars for painting and fabric wall covering was identical in the bids" of Slotnik and Bowen.

We are of opinion that the rulings of law were in error, and if there was anything which might properly be called a finding it was plainly wrong. One purpose of the statute is to make certain that general contractors shall be on an equal basis as to the bids of subcontractors. The recorded subbids, as filed, must be strictly adhered to, and cannot be varied. A subbid once filed by a subcontractor must have an identical meaning for all general contractors. After the time for filing has expired, a subbid is not subject to change, and is, of course, beyond modification by private, confidential, or secret communication between the subcontractor and the general contractor. Similarly, after the time for filing has expired, a general contractor is bound by his bid as filed, and no form of testimony, written or oral, can be received to prove that the bid had some meaning not ascertainable on its face.

The application of these principles to the case at bar is plain. As for the painting subbid, neither the department nor the commission could give weight to the statement made on behalf of Bowen that in its bid the cost of fabric wall covering was included in Item 1. If the specifications required that to be done, a bidder would be held to the specifications; and if not, no statement of the kind could avail him. Evidence that Bowen included such cost in Item 1 should not have been admitted in the Superior Court, and this exception of the petitioners must be sustained. We need not consider a subsidiary controversy as to whether "contractor" meant "general contractor" or "sub-contractor" in the specifications as amended. That the specifications were lacking in desirable clarity in this respect is evident from the conflicting arguments as to their interpretation.

As for the marble and tile subbids, the term adding a percentage to the contract sum if a performance bond "will be required" must have the same meaning to both Slotnik and Bowen. It is fallacious to argue that Slotnik elected to have this added protection and Bowen did not. Bowen was not empowered to waive a performance bond on behalf of the awarding authority, which expressly reserved to itself the right to demand such a bond both in the notice to contractors and in the statutory forms for general bidders and for subbidders. That the awarding authority was to receive a performance bond for the full amount of the contract from the general contractor is beside the point. There was error in the admission of evidence of a so called custom to the effect that the commission has never required performance bonds of subcontractors. This ruling was in conflict with the provisions of G. L. (Ter. Ed.) c. 149, § 44C, inserted by St. 1939, c. 480, as amended by St. 1941, c. 699, §§ 4, 6, 7. *Commonwealth* v. *Rudnick*, 318 Mass. 45, 56.

No great imagination is needed to comprehend the evils that might befall if the statute could be circumvented in the respects noted in this case. Whether the "end result in dollars" for painting and for fabric wall covering is the same under both bids cannot afford any latitude to the awarding authority to disregard the statute. *Bowditch* v. *Superintendent of Streets of Boston*, 168 Mass. 239, 244. *Warren* v. *Street Commissioners of Boston*, 181 Mass. 6, 11. Even if it were supposed that some violation of the law resulted in a benefit to the Commonwealth, that circumstance would be irrelevant. *Conners* v. *Lowell*, 246 Mass. 279, 282. Nor is the reservation of a right "to reject any and all proposals" in the notice to contractors the source of any option to disobey the statutory mandate.[1]

This is not a question of the courts awarding the contract.

---

[1] This entire provision is: "The right is reserved to reject any and all proposals. Any unit price bid that contains a unit price which is unduly high or low may be rejected as unbalanced. If a contract for the work is awarded, it will be awarded to the lowest responsible and eligible bidder determined in accordance with the provisions of Gen. Laws (Ter. Ed.) Chap. 149 as amended by Chap. 480, Acts of 1939, and Chap. 699, Acts of 1941."

The question is whether the department and the commission have complied with the statutory requirements which are the source of their authority. See *Oliver* v. *Gale*, 182 Mass. 39; *Burt* v. *Municipal Council of Taunton*, 272 Mass. 130, 133; *Sweezey* v. *Mayor of Malden*, 273 Mass. 536, 542; *Larkin* v. *County Commissioners of Middlesex*, 274 Mass. 437, 439; *Devir* v. *Mayor of Malden*, 277 Mass. 502, 508. Absence of bad faith or of corruption does not excuse non-compliance with the procedure established by the Legislature for the award of the contract. *Morse* v. *Boston*, 253 Mass. 247, 254. *Safford* v. *Lowell*, 255 Mass. 220, 227.

There remains for consideration a matter of procedure. The respondents have filed with us a motion to dismiss the appeal on the ground that the petitioners gave no order in writing for the preparation of the necessary papers and copies of papers for transmission to the full court within ten days after the case became ripe for final preparation and printing of the record. G. L. (Ter. Ed.) c. 231, § 133, as amended by St. 1933, c. 300, § 2; § 135, as amended by St. 1941, c. 187, § 1. The final decree was entered on November 16, 1951, and on the same day the petitioners filed a claim of exceptions. On November 23, the petitioners filed an appeal, and on November 28 a bill of exceptions. On December 3 (the last day for ordering the printing according to the contention of the respondents) the trial judge approved a stipulation providing for the printing of a consolidated record for this case and the second case discussed below, which is a petition for a writ of certiorari by Slotnik against the commission. The stipulation stated that "whereas said proceedings were heard together in the Superior Court, for the purpose of the presentation of each said proceeding to the Supreme Judicial Court of any and all appeals and exceptions therein, the records of said proceedings be prepared and printed as a consolidated record in so far as said record may be applicable to each proceeding." On the same date the judge approved another stipulation in both cases providing that certain exhibits and documents

did not need to be printed in the consolidated record but should be transmitted by the clerk to the full court in connection with the appeals and exceptions. See Rule 1 of the Rules for the Regulation of Practice before the Full Court, as amended February 1, 1943, 313 Mass. 787. On December 4 the petitioners gave the order for the preparation of the papers for the full court. On December 20 the petitioners waived their bill of exceptions, but not their exceptions, and the transcript of the evidence was filed.

In the second case, the petition for a writ of certiorari, a judgment for the respondents was entered on November 21. The petitioner appealed on November 28.

The respondents' contention is that the case became ripe for final preparation and printing of the record when the appeal was filed on November 23, and that the order for printing the record, which was given on December 4, was not within the ten day period prescribed by G. L. (Ter. Ed.) c. 231, § 135, as amended. They cite such cases as *Cherry* v. *Auger*, 300 Mass. 367, and *Bass River Savings Bank* v. *Nickerson*, 302 Mass. 235. But these authorities are not in point. Within the ten day period, namely, on December 3, before the time for ordering the printing expired, an order that there should be a consolidated record had been made by the judge. Thereafter there was to be but one record for the two cases. The order obviously did not restrict the time for ordering the printing in the second case. It had the necessary effect of extending the time for doing this act required by § 135, as amended (see *Hill* v. *Trustees of Glenwood Cemetery*, 323 Mass. 388, 392), when the extension was secured within the ten day period. *Buchannan* v. *Meisner*, 279 Mass. 457, 460–462. *Royal Tool & Gauge Corp.* v. *Clerk of the Courts for the County of Hampden*, 326 Mass. 390, 392. Accordingly, the time for ordering the printing of the consolidated record then ran from November 28, the date of the appeal in the second case. There is nothing in *Hovhanesian* v. *New York Life Ins. Co.* 310 Mass. 626, 632, which touches this situation. The motion to dismiss is denied.

The petitioners' exceptions are sustained. The final decree is reversed. There is to be a decree for the petitioners in accordance with the prayers of their petition.

*So ordered.*

### THE SECOND CASE.

This petition for a writ of certiorari by Slotnik against the commission was heard upon the petition and return. *Morrissey* v. *State Ballot Law Commission,* 312 Mass. 121, 124. *Sesnovich* v. *Board of Appeal of Boston,* 313 Mass. 393, 399. The case is here upon an appeal from a final judgment dismissing the petition. G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4.

Upon the merits, our decision in the first case is controlling. Although there is no report of the evidence, the return contains substantially the same facts, including written documents and the records of the proceedings of the commission, which in relation to the award to Bowen gave the petitioner a hearing. We must, however, decide whether the petition lies.

It is the function of a writ of certiorari upon a proper and adequate return to correct substantive errors of law by a judicial or quasi judicial tribunal which are not otherwise reviewable by a court. *Jordan Marsh Co.* v. *Labor Relations Commission,* 312 Mass. 597, 599. *Howe* v. *Attorney General,* 325 Mass. 268, 270. *Attorney General* v. *Board of Public Welfare of Wilmington, ante,* 468. G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1; c. 213, § 1A, inserted by St. 1939, c. 257, § 1, as amended by St. 1941, c. 180. In approving the contract for the hospital project we think that the commission was acting in a quasi judicial capacity. The statute from which their authority is derived provides that "no construction of any such project shall be undertaken until plans, specifications and contracts therefor shall have been approved by the commission . . . ." G. L. (Ter. Ed.) c. 92A, § 2, inserted by St. 1947, c. 466, § 3. "The word 'approval' when it appears in our statutes generally means an affirmative sanction by one person or by a

body of persons of precedent acts of another person or body of persons." *Rooney, petitioner,* 298 Mass. 430, 433.

The requirement that the contract be "approved" necessarily involved the making of findings by the commission and then applying the law to the facts found. For example, they had to determine, as the department already had done, that the project was subject to the statute, a matter not in dispute, and that the contract met the standards established by the Legislature as conditions precedent to favorable action by the awarding authority. G. L. (Ter. Ed.) c. 149, §§ 44A–44D, inserted by St. 1939, c. 480, as amended. Whether Slotnik was a "responsible and eligible" bidder is not presently in issue, as the intention to make such a contention was disclaimed by statements of counsel at the hearing of this case in the court below. The prescribed approval inevitably included making a decision that Bowen was the "lowest responsible and eligible" bidder within the meaning of § 44A. On the record of their acts as disclosed by the return, the commission could not rightly reach this result. The bids and subbids, as they appear in the return, when viewed as the Legislature must have intended, show that Bowen was not the lowest bidder because Slotnik was. There was error of law in the commission's vote of approval of the contract. They proceeded upon an erroneous construction of the statute. *Cambridge v. Railroad Commissioners,* 153 Mass. 161, 170. Cases like *Archambault v. Mayor of Lowell,* 278 Mass. 327, where no error of law was shown, are distinguishable.

Judgment is to be entered quashing the decision of the Massachusetts public building commission approving the award by the department of public health to John Bowen Co., Inc., of the contract for "Project No. P-H8 Chronic Diseases Hospital" in Boston.

*So ordered.*