EAST SIDE CONSTRUCTION CO., INC. *vs.* TOWN OF ADAMS
& others
(and three companion cases[1]).

Berkshire.    September 16, 1952. — October 31, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Public Works. Contract,* For public work, Bidding for contract, Subcontract, With municipality. *Municipal Corporations,* Contracts. *Equity Jurisdiction,* Taxable inhabitants' suit.

An award of a subcontract for demolition work in connection with a public construction project under the procedure established by G. L. (Ter. Ed.) c. 149, §§ 44A–44D, as amended, to the selected general contractor was made in violation of the statute where he had filed no subbid for such work with the awarding authority. [349–350]

A general bidder on a public construction project under the procedure established by G. L. (Ter. Ed.) c. 149, §§ 44A–44D, as amended, whose proposal did not include in item 2, covering the work of subcontractors, any subbid for demolition work specified as subcontractor's work, could not lawfully be selected as the general contractor. [350–351]

A taxpayers' petition lay under G. L. (Ter. Ed.) c. 40, § 53, to restrain illegal expenditures by a town under a contract for public demolition work awarded in violation of G. L. (Ter. Ed.) c. 149, §§ 44A–44D, as amended, to one who had not submitted a proper bid therefor, although such contract was awarded at an amount substantially less than that of the lowest proper bid submitted. [351–353]

A general bidder on a public construction project under the procedure established by G. L. (Ter. Ed.) c. 149, §§ 44A–44D, as amended, is not required to select for inclusion in item 2 of his proposal covering the work of subcontractors the lowest subbid for any such work. [353–355]

BILL IN EQUITY, PETITION for a writ of certiorari, and PETITION for a writ of mandamus, filed in the Superior Court on June 27, July 2, and July 5, 1951, respectively. Also a

[1] Two companion cases are by the plaintiff in the first case against the defendants in the first case. A third companion case is by John Melillo and others against the defendants in the first case and the treasurer of the town.

East Side Construction Co. Inc. *v.* Adams.

PETITION, filed in the Superior Court on July 16, 1951, under G. L. (Ter. Ed.) c. 40, § 53.

The cases were heard by *Giles*, J., on demurrers.

*John N. Alberti*, (*Andrew T. Campoli* with him,) for the plaintiff and petitioners.

*Bailey Aldrich*, (*Walter J. Donovan* with him,) for O. D. Purington Co., Inc.

*Andrew J. Dilk*, Town Counsel, for town of Adams.

WILKINS, J. The town of Adams voted that a high school building be constructed in accordance with certain plans. O. D. Purington Co., Inc. (hereinafter called Purington), was awarded the general contract. East Side Construction Co., Inc. (hereinafter called East Side), an unsuccessful subbidder for the performance of the work of demolition, excavation, and rough grading (hereinafter referred to as demolition), brings a bill in equity, a petition for a writ of certiorari, and a petition for a writ of mandamus against the town, Purington, the members of the school committee, and the members of the school building committee of the town. In another case not less than ten taxable inhabitants of the town bring a petition to restrain certain expenditures. G. L. (Ter. Ed.) c. 40, § 53. In each case the respondents or defendants demurred generally to the petition or bill of complaint, the demurrers were sustained, and the petitioners or plaintiff appealed. In the two equity cases final decrees were entered dismissing the bill, or petition, and the plaintiff, or petitioners, appealed.

## THE TAXPAYERS' SUIT.

We first give the substance of the allegations of the petition. On May 25, 1950, the town meeting appropriated $1,100,000 to erect and furnish the new high school building, and on May 4, 1951, made an additional appropriation of $250,000. On March 16, 1951, the school building committee advertised for bids by general contractors and by subbidders, including subbids for demolition. The specifications provided that the "project mentioned is to be

carried out according to" G. L. (Ter. Ed.) c. 149, §§ 44A–44D, "in respect to 'Fair Competition for Bidders on Construction, etc., of Public Works.'" Subbids for demolition were received from four subbidders, one of whom was later disqualified. Seven general contractors, including Purington, bid for the entire building project. The four subbidders on demolition mailed copies of their subbids to the general bidders. On April 12, 1951, the bids and subbids were opened, and it appeared that Purington had submitted the lowest bid for the entire project, and that the subbid of East Side in the sum of $35,916 "was the lowest qualified bid submitted by any responsible and eligible subbidder" for the demolition work. Purington did not customarily perform with its own employees demolition work, and did not submit a subbid for demolition work "as required by subsection (F) of § 44C"; nor did its bid contain "the name of any conforming, eligible, and responsible subbidder for the work of demolition." Nevertheless, the awarding authority of the town, consisting of the school building committee and the school committee, "in violation of" §§ 44A–44D, awarded the general contract to Purington in the sum of $1,084,811, and on May 21, 1951, a formal contract was executed "with change order provision for the work of demolition." On June 13, 1951, the school building committee and the school committee, in accordance with the change order provision, awarded the work of demolition to Purington for $28,596 additional. The money for the erection of the school is to be raised by taxation on property situate in the town.

The general contract for the construction of this public building by the town at a cost of more than $1,000 is admittedly within G. L. (Ter. Ed.) c. 149, §§ 44A–44D, inserted by St. 1939, c. 480, as amended by St. 1941, c. 699. See § 44A. Hence, it cannot be seriously denied, the award of the subcontract for demolition to the successful general bidder which filed no subbid for that work was in violation of the statute. Bids of general contractors must be in two items, item 1 covering the work of the general contractor,

and item 2 that of subcontractors.   § 44C (A) (2), inserted by St. 1939, c. 480.   "If a general bidder customarily performs with his own employees any sub-trade or trades listed in item two of the proposal, he may submit a' sub-bid proposal on the form as herein required of all regular subcontractors, . . . and shall also submit his name and amount for such work in his own proposal for the general work under item two.   Such submission by the selected general contractor shall be considered on a par with sub-bids filed with the awarding authority by sub-bidders who customarily perform such work . . . ."   § 44C (F), inserted by St. 1939, c. 480.   "All principal and such minor sub-contractors as are designated in the proposal form shall deliver or mail to the awarding authority record copies of all bids sent by them to the general contractor. . . . All such bids shall be in the possession of the awarding authority, and delivered or mailed to the general contractor . . . at least two days before the date for receipt of general contract proposals."   § 44C (B), as appearing in St. 1941, c. 699, § 2.   The names of all who file subbids shall be mailed on the date of receipt to the general bidders, "and no sub-bidder not included on such list shall be used by the general contractor in his bid."   § 44C (C), inserted by St. 1939, c. 480.   Only subbids filed with the awarding authority can be considered in the final selection of subbidders.   § 44C (B), as appearing in St. 1941, c. 699, § 2.   The subbids as filed must be strictly adhered to, and cannot be varied by a general contractor.   *Gifford* v. *Commissioner of Public Health,* 328 Mass. 608, 615.

If Purington, as is alleged, did not customarily perform demolition work, it was not eligible to file a subbid for that work.   Any| such ineligibility, however, ceases to be of major importance, because Purington, in fact, filed no subbid and, therefore, could not be selected as a subcontractor. The effect is that Purington did not file a general bid in accordance with the statute, and was not properly selected as the general contractor.   "Bids from general contractors shall be for the .complete project as specified and shall include the names of all principal and such minor sub-

contractors as are designated in the proposal form, and the general contractor shall be selected on the basis of such bid." § 44C (A) (1), inserted by St. 1939, c. 480. Similar provisions in statutes relating to the awarding of contracts for public work have been construed as mandatory. *Bowditch* v. *Superintendent of Streets of Boston,* 168 Mass. 239. *Warren* v. *Street Commissioners of Boston,* 181 Mass. 6. *Morse* v. *Boston,* 253 Mass. 247. *Safford* v. *Lowell,* 255 Mass. 220. *Fluet* v. *McCabe,* 299 Mass. 173, 178. The town was without authority to waive this requirement. *Bay State Street Railway* v. *Woburn,* 232 Mass. 201, 203. *Burt* v. *Municipal Council of Taunton,* 272 Mass. 130, 133.

The next question is whether a taxpayers' suit may be brought when a contract for demolition was awarded to Purington at a figure more than $7,000 less than that of the lowest subbidder which qualified. It is urged that a suit can lie only where the action sought to be restrained will result in an increased burden upon the taxpayers. Reliance is placed on *Richards* v. *Treasurer & Receiver General,* 319 Mass. 672, 675–677, but as was pointed out in *Sears* v. *Treasurer & Receiver General,* 327 Mass. 310, 319, in the *Richards* case provision had been made for reimbursing the Commonwealth for the alleged illegal expenditures and no part of the ultimate burden was to fall on the taxpayers. The plain language of c. 40, § 53, which should be given "a somewhat liberal construction" (*Prince* v. *Crocker,* 166 Mass. 347, 358), contains no exception. The words are that a petition will lie where a town is about to expend money "in any manner other than that for and in which such town has the legal and constitutional right and power to raise or expend money or incur obligations." G. L. (Ter. Ed.) c. 40, § 53.[1] The Legislature obviously intended that this remedy for checking illegal expenditures should be effective at once

[1] Section 53 reads in part: "If a town or any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town for any purpose or object or in any manner other than that for and in which such town has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial or superior court may, upon the petition of not less than ten taxable inhabitants of the town, determine the same in equity . . . ."

upon a showing of unlawfulness and should not be impeded
by contentions or defences that, somehow or other, a par-
ticular violation of the statutory mandate might not cause .
pecuniary loss. *Hood* v. *Mayor & Aldermen of Lynn*, 1 Allen,
103, 104–105. *Fuller* v. *Trustees of Deerfield Academy*, 252
Mass. 258, 260. *Dealtry* v. *Selectmen of Watertown*, 279
Mass. 22, 27. In *Bowditch* v. *Superintendent of Streets of
Boston*, 168 Mass. 239, where a contract to build a sewer
without advertisement or bond was awarded in violation of
a statute, this court rejected the contention now made by
the respondents, and said (page 244), "Nor does it matter
that the cost of the sewer may not have been increased by
the method that was pursued. The taxpayer has a right to
insist that provisions intended for his security shall be ob-
served, notwithstanding the fact that, in a particular case,
he may have suffered no harm by reason of the neglect of
the authorities to comply with them," citing *In re Emigrant
Industrial Savings Bank*, 75 N. Y. 388, 396. Again in *War-
ren* v. *Street Commissioners of Boston*, 181 Mass. 6, 11, it
was said, "It is no answer to say that it does not appear
that the cost of the undertaking has been any greater than
if done in exact compliance with the requirements of the
statutes. Whether the cost be greater or less it is impossible
for us to say. The Legislature prescribed a certain method
of doing the work as a safeguard against fraud and abuse
which, when committed, it would be difficult, if not im-
possible, to detect or remedy. The intention was to pre-
vent evil rather than to attempt to detect and expose it
when done. The taxpayer has the right to insist that these
provisions which have been made for his protection shall be
observed, at least so far as they affect him. The chance of
detecting fraud and corruption liable to occur if the work
is done in another way than that prescribed by law is no
adequate substitute in the opinion of the law making power
for the safeguards thus given him." That the statutory
violation may result in some benefit to the town is an irrele-
vant circumstance. *Simpson* v. *Marlborough*, 236 Mass.
210, 213. *Conners* v. *Lowell*, 246 Mass. 279, 282. *Safford*

v. *Lowell*, 255 Mass. 220, 227. *Gifford* v. *Commissioner of Public Health*, 328 Mass. 608, 616. We think that the petitioners need only show that they have been deprived of the protection the law has sought to afford.

It has been argued that the controversy has become moot. No facts on this issue appear in the record. They have not been presented by affidavit. *Hubrite Informal Frocks, Inc.* v. *Kramer*, 297 Mass. 530, 532–533. No agreement among counsel was elicited by questions from the court during the arguments before us. *Brown* v. *City Council of Cambridge*, 289 Mass. 333, 334. It is stated in the town's brief that the demolition work has been completed. We do not know to what extent it has been paid for. In any event, the general contract was not lawfully awarded. As to this, the town's brief states the superstructure is sixty-five per cent completed. For the present, it is enough to say that nothing appears to make applicable the principle of such a case as *Fuller* v. *Trustees of Deerfield Academy*, 252 Mass. 258.

The interlocutory decree sustaining the demurrers is reversed, and instead an interlocutory decree is to be entered overruling the demurrers. The final decree dismissing the bill is reversed.

*So ordered.*

### THE CASES BROUGHT BY EAST SIDE.

It is unnecessary to consider separately the three cases brought by East Side. All are based on the theory that its proposal was the lowest qualified bid submitted by any responsible and eligible subbidder for the demolition work, and as such should have been accepted by Purington. But there is no statutory requirement that in every case the lowest subbid must be accepted. A subbidder's proposal is addressed to the general contractor. § 44C, inserted by St. 1939, c. 480, as amended by St. 1941, c. 699, § 7. When accepted, a subbidder enters into no contractual relation with the town, but becomes bound to the general contractor.

A general contractor is free to include in his bid the subbid of any subcontractor, however high, although in so doing he, of course, takes the chance of not becoming "the lowest responsible and eligible bidder." § 44A, as appearing in St. 1941, c. 699, § 1. A subbidder has no right to insist that his subbid, however low, be accepted by a general contractor, any more than has a general contractor a right to force an unwilling subbidder to allow his subbid to be included in item 2 of the general contractor's general bid. § 44C (B), as appearing in St. 1941, c. 699, § 2.

This result not only is reasonable, but seems necessary from the statutory procedure. "No recorded sub-bids shall be opened by the awarding authorities until after the selection of the general contractor." § 44C (B). The general contractor must be the "lowest responsible and eligible bidder," a term defined in the act as "the bidder whose bid is the lowest of those bidders possessing the skill, ability and integrity necessary to the faithful performance of the work in case no substitution of sub-contractors is made in accordance with section forty-four C, or whose original or adjusted bid is the lowest of such bidders in the event of such substitution or substitutions." § 44A, as appearing in St. 1941, c. 699, § 1. It would be surprising to allow the selection of the general contractor before the subbids were opened if their opening were to be so vital a factor in determining the eligibility of the general contractor.

It is also significant that in § 44C (E), inserted by St. 1939, c. 480, as amended by St. 1941, c. 699, § 4, the express provision for the substitution of subcontractors mentions but two grounds for such action, neither of which concerns an omission to use a lowest subbid. Both the enumerated grounds have to do with matters which necessarily could not arise until after the opening of the subbids and are unrelated to the contents of the subbids. "If a subcontractor who has been selected and included in the general contract fails to sign the sub-contract . . . or fails to furnish a performance bond to the general contractor . . . if required so to do," he may be replaced, "and the general contractor

shall select, from the sub-bidders who have conformed to the bidding procedure, the next lowest bidder at the amount named in such sub-bid, and the total contract price shall be revised . . . ." The reference to "the next lowest bidder" is puzzling. We, however, are not called upon to conjecture what may have been the legislative intent in enacting this provision, which is not now relevant, or to guess how it should be applied in an appropriate case. We need merely say that, viewing the general scheme of the entire statute, we are unable to deduce from this provision alone an intent to require the selection of the "lowest responsible and eligible bidder" on each subcontract.

The contrary conclusion could lead to strange results. If the lowest subbid must be accepted on each subcontract designated in the proposal form, the one who has been selected as the lowest bidder on the general contract nevertheless could not properly be selected unless in each case he had been given the consent to use, and had in fact used, the subbid of the lowest subbidder on each subcontract. There thus might arise a stalemate of indefinite duration in the construction or repair of public buildings.

In case numbered 297, the interlocutory decree sustaining the demurrers and the final decree dismissing the bill of complaint are affirmed. In cases numbered 298 and 299, the petitions for a writ of certiorari and for a writ of mandamus, respectively, the orders sustaining the demurrers are affirmed, and in each case judgment is to be entered dismissing the petition.

*So ordered.*