FRANCIS A. MORSE & others *vs.* CITY OF BOSTON & others.

Suffolk. January 22, 23, 1925. — September 18, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Boston. Municipal Corporations,* Amendment of contract awarded after competitive bidding. *Statute,* Construction. *Contract,* Validity. *Equity Jurisdiction,* Suit by ten taxable inhabitants under G. L. c. 40, § 53.

All contracts of the character described in St. 1890, c. 418, § 6, and St. 1909, c. 486, § 30, made by or in behalf of the city of Boston, must conform with the requirements of those statutes.

The design of the Legislature in enacting the statutory provisions above described was to establish genuine and open competition after due public advertisement in the letting of contracts for city work, to prevent favoritism in awarding such contracts and to secure honest methods of letting contracts in the public interest; and those statutes must be interpreted, if reasonably possible, so as to effectuate that design.

Statutes must be interpreted as enacted: omissions cannot be supplied by the judicial department of government.

Every presumption is to be indulged that the General Court, in enacting legislation purporting and intending to remedy a certain evil, sought to put in force provisions effective for that purpose.

Statutes enacted at different times are to be construed so far as possible to constitute a harmonious and consistent body of legislation.

A contract, executed for or in behalf of the city of Boston after due observance of the requirements of Sts. 1890, c. 418, § 6; 1909, c. 486, § 30, cannot be changed in vital and essential particulars without observance in the making of an amendment of all the formalities prescribed by those statutes for the making of the original contract.

The reference in St. 1890, c. 418, § 6, to alteration of a contract of the character above described, is not a grant of power, but is in itself a limitation by prescribing the formalities by which alone such alteration can be accomplished, and that provision falls far short of authorizing an essential change of such a contract of such magnitude as to be incompatible with the general scheme of the statutes.

A contract between the city of Boston and a firm of contractors, made in accordance with the provisions of Sts. 1890, c. 418, § 6; 1909, c. 486, § 30, and providing for the filling of certain land at a certain price determined by measurement of the space filled after the material had been leveled off and rolled, cannot be amended, without the observance of the requirements of advertisement and notice contained in those statutes, so that the price to be paid should be determined by the amount of filling and loam measured in vehicles before it had been placed on the land and leveled off and rolled, less a deduction of ten per cent, where it appears that such amended method of measurement would increase the cost to the city by about $200,000, since the amendment in effect substitutes a new and different contract for that originally made.

Good faith on the part of officers of the city and of the contractor is ineffectual to validate such an amendment made to the contract above described without the formalities required by the statute.

Mere inconvenience does not warrant departure from the statutory requirements above described.

In a bill in equity under G. L. c. 40, § 53, by ten taxable inhabitants of the city of Boston against the city, certain of its officers, and a contractor, it was alleged that the city, through its proper officers and after observance of the requirements of St. 1890, c. 418, § 6, and St. 1909, c. 486, § 30, had made a contract with the contractor for the filling of certain park land and thereafter, without further observance of those statutory requirements, had purported to amend the contract in certain particulars which in effect substituted a new and different contract; and in the bill facts were set out to the effect that, without any change in conditions affording just ground of loss occasioned to the contractor or gain accruing to the city, a great deal more money was to be paid to the contractor than was required by the contract. The bill also alleged that the agreement to make the alteration was without consideration. The plaintiffs sought to have the amendment declared void and further payments to the contractor thereunder stopped. On a report of the suit to this court upon the bill and demurrers, it was *held*, that

(1) The averment in the bill that the alteration in the contract was without consideration was supported by the subsidiary facts alleged, which showed want of consideration;

(2) Allegations of the bill were sufficient to the effect that payments under the contract as amended were proposed in the immediate future. The acceptance by the city officials of a mere offer by a contractor to take more money for performance of public work than was required by a valid contract did not constitute a new and binding contract to pay the additional amounts and did not bind the municipality, such a promise not being supported by a consideration.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on October 2, 1924, by thirteen taxable inhabitants of the city of Boston against that city, its mayor, the commissioners of its park department, its treasurer, its auditor, J. C. Coleman and Sons Company and the Maryland Casualty Company, seeking to have declared void certain amendments to a contract made on July 17, 1922, by the commissioners on behalf of the city with the defendant J. C. Coleman and Sons Company.

The allegations of the bill are described in the opinion. All of the defendants excepting Maryland Casualty Company demurred. The demurrers came on to be heard by *Crosby*, J., who, being of the opinion that the decision on the demurrers so affected the merits of the controversy that before further proceedings the matter ought to be determined by the full court, reserved and reported the case on the petition and the demurrers for determination by the full court.

*R. C. Curtis*, (*C. P. Curtis, Jr.*, with him,) for the petitioners.

*J. P. Lyons*, Assistant Corporation Counsel, for city of Boston and its officers.

*J. A. Sullivan*, for J. C. Coleman and Sons Company.

RUGG, C.J.    This is a suit in equity by ten taxpayers under G. L. c. 40, § 53, to restrain payment of money out of the treasury of the city of Boston alleged to be contrary to law. The bill alleges the making of a contract by the city, duly executed according to law, through the park commissioners, with one of the defendants, J. C. Coleman & Sons Company, hereafter called the contractor, to fill certain land with earth and gravel and loam, with other improvements. The contract was dated July 17, 1922. Further allegations are that the contract "contained an estimate that there would be required 90,000 cubic yards of earth and gravel filling, 6000

cubic yards of similar filling for a roadway, 75,000 cubic
yards of loam," the total being 171,000 cubic yards, and
"6000 cubic yards of earth were to be excavated and used in
the filling," the exact quantity of which "to be paid for shall
be determined by measurement of the space filled . . . after
the material has been leveled off and rolled." "On July 5,
1923, and again on May 26, 1924, the contract was amended
by agreement of all parties with the approval of the defend-
ant mayor to increase the earth and gravel filling and the
loam by about 214,000 cubic yards, but always with the same
unit price, together with other and minor modifications. . . .
The time for completing the contract originally fixed as July
1, 1923, was extended from time to time, and the last exten-
sion, granted May 22, 1924, extended the time for completion
to October 1, 1924. . . .    Monthly payments . . . have been
made to the defendant J. C. Coleman & Sons Company on the
basis of the filling and loam delivered in vehicles, although
the quantity of filling and loam delivered as measured in
vehicles exceeds the quantity of filling and loam as measured
after having been permanently placed in position and rolled,
as required by the contract, by over one third.   The said
payments upon the basis of filling and loam delivered as
measured in the vehicles have been made for about 351,500
cubic yards in the sum of about $355,850."   Actual measure-
ments of the filling and loam in place, made at the request of
the finance commission, "show that only between 137,000
and 172,300 cubic yards have been actually placed in perma-
nent position," and that the contractor "has been overpaid
to the extent of over $200,000."   Thereafter, on August 8,
1924, the contract was further amended by striking out the
original provisions for payments of filling and loam measured
in place, and inserting in place thereof provisions for payments
of filling and loam measured in the vehicles less a deduction of
ten per cent.   This amendment purports and was intended to
apply to filling and payments already completed as well as to
future filling and payments.   There are also allegations that
no bids for the additional work covered by the amendments
were called for or advertised, and that no signed statement
by the park commissioners giving the reasons for this omis-

sion was published, and no written authority for the omission to call for bids was given by the mayor. The amendments to the contract are alleged to be illegal and void as contrary to law and to have been without consideration. It further is alleged that work under the contract is still in progress and that large sums of money are about to be paid to the contractor.

Several defendants demurred on the grounds, in brief, that the bill does not state a case entitling the plaintiffs to relief either in law or in equity, and that the amendments to the contract were legally made and all payments thereunder lawful. The case is reported on bill and demurrer.

No question is made as to the validity of the original contract. The only issue raised, as stated by the plaintiffs, is whether the amendments to the contract, and in particular that of August 8, 1924, are valid. The issue is by them stated to be further narrowed in substance to the validity of the August 8 amendment, because the other amendments increasing the original estimates were made necessary by the method of payment adopted, of paying by the cubic yard of material in vehicles instead of in place as required by the contract.

The words of the controlling statutes, so far as pertinent, are in St. 1909, c. 486, § 30: "Every officer or board in charge of a department . . . when about to do any work or to make any purchase, the estimated cost of which alone, or in conjunction with other similar work or purchase which might properly be included in the same contract, amounts to or exceeds one thousand dollars, shall, unless the mayor gives written authority to do otherwise, invite proposals therefor by advertisement in the City Record. . . . No authority to dispense with advertising shall be given by the mayor unless the said officer or board furnishes him with a signed statement which shall be published in the City Record giving in detail the reasons for not inviting bids by advertisement"; and St. 1890, c. 418, § 6: "All contracts made by any department of the city of Boston shall, when the amount involved is two thousand dollars or more, be in writing, and no such contract shall be deemed to have been

made or executed until the approval of the mayor in writing is affixed thereto. . . . and no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer or board making the contract, with the approval of the mayor affixed thereto."

The manifest purpose of these statutes is to put a limitation upon the wide power which otherwise officers of the city would possess to make binding contracts with reference to city work. All contracts made by or in behalf of Boston must conform to the requirements of the statutes. The design of the Legislature in enacting these provisions was to establish genuine and open competition after due public advertisement in the letting of contracts for city work, to prevent favoritism in awarding such contracts and to secure honest methods of letting contracts in the public interests. The main aim was to protect the public. Full publicity is provided as a means to that end. While there is vested in the mayor power to dispense with such advertisement, that can only be done after publication of a detailed statement of the real reasons therefor. This purpose is made more clear by reference to earlier statutes. St. 1885, c. 266, § 6. St. 1890, c. 418, §§ 4, 5, 6. St. 1909, c. 486, § 30. Critical comparison of these successive enactments discloses a progressive legislative intent to narrow the otherwise unlimited power of city officers to the end that city contracts shall be free, open and honest. The statutes must be interpreted, if reasonably possible, so as to effectuate the purpose of the framers. Statutes must be interpreted as enacted. Omissions cannot be supplied by the judicial department of government. *Arruda* v. *Director General of Railroads*, 251 Mass. 255, 263. *See* v. *Building Commissioner of Springfield*, 246 Mass. 340, 343. Every presumption is to be indulged that the General Court intended to put in force a piece of legislation effectual to remedy the evil at which it appears to be aimed. *Dascalakis* v. *Commonwealth*, 244 Mass. 568, 570. Statutes enacted at different times are to be construed so far as possible to constitute a harmonious and consistent body of legislation.

Applying these principles to the case at bar, these results

follow. The terms and purpose of the governing statutes constitute in themselves a restriction of the power to amend and alter a contract once made in accordance therewith. It cannot be changed in vital and essential particulars without observance of all the formalities prescribed by the statutes. The due execution of the contract after advertisement and compliance with all statutory requirements in the light of the words and purpose of the governing statutes is in general a limitation upon amending the contract in substantial and capital respects without conformity anew to the statutory requirements. The city officers have authority doubtless to add to or to change the contract within reasonable limits in order to remedy incidental defects and to improve the work in minor details. This is implied from the power to alter recognized by St. 1890, c. 418, § 6. *Shea* v. *Milford,* 145 Mass. 528, 531. The reference to alteration of a contract in that section is not a grant of power but is in itself a limitation as to the form in which alone it can be accomplished. That provision falls far short of authorizing an essential change of such magnitude as to be incompatible with the general scheme of the statute. An alteration which results in a substantially new contract as to a main element is not permissible under the statute. With reference to a construction contract of this character, the alterations which in view of the aim and words of the statute may be made without further compliance with the statute are only such as are incidental to full execution of the work described in the contract, and are of minor importance. The alterations permissible under this principle are such in nature, magnitude and expense as bear a reasonable subsidiary relation to the work originally covered by the contract. When a contract is to be modified so as in substance and effect to be made new and different in main aspects, that cannot be done under the guise of an amendment or alteration. It would be a vain thing for the Legislature to establish these safeguards for the public treasury to govern the initial execution of a contract and yet to permit all the evils thus prohibited to be accomplished by amendment or alteration of such a contract when once executed.

The allegations of the present bill, which for the purposes of this decision must be accepted as true, show that the unit of payment has been vitally changed by the amendment of August 8, 1924. Cubic yards of filling and loam, instead of being paid for according to measurement in place after being rolled and compacted, are to be paid for as measured in vehicles less ten per cent, an apparent increase of almost one third. The aggregate amount of change in this respect runs into large sums of money according to the allegations. Manifestly this is not incidental to the main contract; it is in itself a major factor. The nature of the contract as thus altered, from a business standpoint, is quite different from the contract as first executed. The increase in quantities called for by the other amendments or alterations in the contract accentuate this aspect of the matter. It seems clear to us that a new and different contract has been substituted for the original contract. This is a violation of the statute.

The good faith of city officers and of contractor and the absence of averments of fraud do not overcome or affect the case as made by the bill. That case in substance is the making, under the garb of an amendment or alteration of an old and valid contract, a change in its terms and obligations so great as to be the equivalent of a new contract. Good faith does not warrant the violation of this statute. *Commonwealth* v. *Mixer*, 207 Mass. 141.

The argument of inconvenience, arising from the possibility of having two different contractors working upon the same job, if there must be another advertisement and award of contract under the statute, is not impressive. Mere inconvenience does not warrant departure from a statutory mandate. In instances where the public interest requires, and the detailed reasons are furnished by the proper city officer and published, advertising may be dispensed with in accordance with the express terms of the statute.

Article 2 of the contract, authorizing the city to change or increase the work required by the contract, has no application to the conditions set forth in the bill. In any event parties cannot by contract overcome the force of the statutory requirement.

The conclusion reached on this aspect of the case is in harmony with principles declared in decisions on somewhat analogous questions in other jurisdictions. *Ely* v. *Grand Rapids,* 84 Mich. 336. *Auditor General* v. *Stoddard,* 147 Mich. 329. *Schumm* v. *Seymour,* 9 C. E. Green, 143. *Nash* v. *St. Paul,* 23 Minn. 132, 136. *Smith* v. *Philadelphia,* 227 Penn. St. 423. *National Contracting Co.* v. *Hudson River Water Power Co.* 192 N. Y. 209. *Cleveland, Cincinnati, Chicago & St. Louis Railway* v. *Moore,* 170 Ind. 328, 340. *Chicago* v. *McKechney,* 205 Ill. 372, 449.

The bill is not open to successful attack in its averments that the alterations in the contract were without consideration. Facts are set out to the effect that, without any change in conditions affording just ground in loss occasioned to the contractor or gain accruing to the city, a great deal more money was to be paid to the former than was required by the contract. These facts in themselves show want of consideration. *Parrot* v. *Mexican Central Railway,* 207 Mass. 184, 194. There is no room on the facts alleged for the application of the principle illustrated by cases like *Crocket* v. *Boston,* 5 Cush. 182, 188, that offer and acceptance constitute a contract. Mere offer by a contractor to take more money for performance of public work than is required by a valid contract, when accepted by city officials, does not bind the municipality.

The allegations are sufficient to the effect that payments under the contract as amended are proposed in the immediate future. Adequate facts are set forth in this particular to satisfy the requirements of G. L. c. 40, § 53, as to a bill by the ten taxpayers. *Fuller* v. *Trustees of Deerfield Academy,* 252 Mass. 258, and cases there collected.

It is not necessary to discuss other questions argued. The bill is full enough on its face to warrant judicial inquiry.

*Demurrer overruled.*