EUGENE FLUET & others *vs.* JAMES A. McCABE & others.

Essex.    November 15, 1937. — January 3, 1938.

Present: FIELD, LUMMUS, QUA, DOLAN, & COX, JJ.

*Municipal Corporations*, Contracts, Officers and agents. *Agency*, Scope
of authority. *Contract*, Validity, Of municipal corporation. *Lawrence*.

The director of public buildings of the city of Lawrence was authorized
by implication of its charter to contract for such labor as was required
for repair work on such buildings, subject to charter provisions as to
appropriations being available and also to the supervision and control
of a majority of the city council.

PETITION, filed in the Superior Court on September 11,
1936.

The case was heard by *Williams*, J. The petitioners ap-
pealed from a final decree.

The case was submitted on briefs.

*H. V. Charbonneau*, for the petitioners.

*M. A. Cregg*, for the respondents.

Cox, J. This is a petition in equity under G. L. (Ter.
Ed.) c. 40, § 53, by thirteen taxable inhabitants of the city
of Lawrence to restrain the alleged illegal payment of money
from the city treasury. The respondent Eberhardt, here-
inafter referred to as Eberhardt, is an alderman and as such
is director of the department of public property of the
respondent city. Other respondents are the auditor, treas-
urer and purchasing agent. The remaining respondents,
who are copartners doing business as E. A. McCabe & Co.,
hereinafter referred to as McCabe & Co., assert a claim for
certain labor performed for the city.

The case was referred to a master. The evidence is not
reported. Therefore the findings of fact made by the master
must be accepted as true unless on the face of the report
they are mutually inconsistent or contradictory and plainly
wrong. *MacLeod* v. *Davis*, 290 Mass. 335. *Kasper* v.
*H. P. Hood & Sons*, 291 Mass. 24.

The master found that in June and July, 1936, an inspector of the Hartford Steam Boiler Inspection and Insurance Company, "either at the request of, or at least with the consent of the city," made an inspection of all the boilers in its public buildings, this having been the practice followed by the city for years. The inspector sent to the "commissioner in charge," Eberhardt, "who had had charge of this repair work for six years prior to 1936," a separate report of his inspection for each boiler and recommendations for repairs. It would have been impossible for the inspector or Eberhardt or any other person to determine from an inspection of the boilers what amount of work or materials would be necessary to place the boilers in good working condition. Upon receipt of the inspection reports, Eberhardt had all the steam fitting and all the work on cast iron boilers done by employees of the city. What work could not be done by city employees was ordered to be done by McCabe & Co., who had performed similar work for the city for the past forty years. The labor was not ordered at one time, but was sent piecemeal to McCabe & Co., and no single order for labor exceeded $500, although the total labor charge was $881.50. The charges for this labor were to be paid from the general appropriation for general expense and, at the time the orders for labor were given, there were sufficient funds in the appropriation to pay the charges. The materials for the work were ordered by Eberhardt by means of requisitions sent to the purchasing agent of the city, who in turn furnished McCabe & Co. with orders for every item charged for by them. The total charges of McCabe & Co. were $1,542.05, and "no advertisement had been published by the city clerk and there had been no vote as required under the provision [of the city charter] for the immediate preservation of public peace, health or safety," nor had any "vote been passed by the city council of the city of Lawrence relative to the authority of Commissioner Eberhardt to have this labor performed or the materials supplied." The master also found, "so far as it be a question of fact," that McCabe & Co. and the city entered into separate contracts for the

performance of each item of labor set forth in the petition, and that each item of labor therein was billed separately to the city; that none of the contracts entered into between McCabe & Co. and the city for labor upon the boilers of the public buildings of the city exceeded $500 or violated the provisions of the city charter. All the bills were approved by the proper city officials. No question was raised but that McCabe & Co. performed the labor and furnished the materials set out in the petition and that the charges therefor "were fair and reasonable." The master's findings as to the liability of the city for materials or supplies furnished by McCabe & Co. need not be considered as they were favorable to the petitioners, and the only appeal here is that of the petitioners. Twenty-six items or charges for labor appear in the schedule annexed to the petition, the largest being for $121.50 and the smallest for $13.50. The period of time within which this labor was performed was from August 3 to August 31, inclusive. The petitioners filed four objections to the master's report: (1) because he found that McCabe & Co. and the city entered into separate contracts for the performance of each item of labor; (2) because he found that none of the contracts for labor upon the boilers exceeded $500; (3) because he did not find and rule that the whole sum for labor and materials formed one entire contract for a sum exceeding $500; (4) because he found that he was not satisfied that Eberhardt knew or could reasonably have been expected to know that the cost of materials and labor for the repairs suggested by the inspector would exceed $500. An interlocutory decree overruling the exceptions and confirming the master's report, and a final decree enjoining the city and its respondent officials from paying, and McCabe & Co. from collecting from the city, any money for any of the supplies furnished, with costs to the petitioners, were entered. The injunction did not extend to payment for the labor discussed in this opinion. The petitioners appealed from both decrees.

The petitioners contend that (1) Eberhardt had no authority to make a contract with McCabe & Co. for repairs on public buildings; (2) the amount sought to be collected by

McCabe & Co. was under a contract entered into in violation of the city charter; (3) the decree should be so modified as to enjoin the payment of all the items set forth in the schedule annexed to the petition, which include the charges for both labor and materials.

The charter of the city of Lawrence is St. 1911, c. 621, Part II, as amended by St. 1914, c. 363. (See G. L. [Ter. Ed.] c. 43, §§ 64–78.) The government of the city and the general management and control of all its affairs are vested in a city council consisting of a mayor and four aldermen, all of whom are elected at large. The administration of all affairs of the city, except the affairs of the schools, is divided into five departments, each managed by a member of the city council. One of these is the department of public property, which includes the following subdepartments and all boards and offices connected therewith, namely, "buildings, parks and public grounds." Prior to 1914, except for the department of finance, which was specifically allotted to the mayor, the city council was required to designate one alderman to be director of each of the other departments, but the amendment, St. 1914, c. 363, provided in effect that thereafter, as vacancies occurred, each alderman should be elected "to be director" of the department for which he was a candidate. The city council, however, by a four-fifths vote, when it is deemed necessary for the interests of the city, can change the distribution of the executive and administrative powers, authorities and duties among the five departments, except as to matters of finance. Under the subtitle, "Powers of City Council," it is provided that the city council shall determine the policy to be pursued and the work to be undertaken in each department, but each member of the city council shall have full power to carry out the policy or have the work performed in his department, as directed by the city council. The city council has full supervision of the erection, alteration and repair of all public buildings, including schoolhouses. Under the subtitle "Departments," among other things, it is provided that each member of the city council shall manage the department over which he is elected director, subject, how-

ever, to the supervision and control of a majority of the members of the city council, acting jointly, except as otherwise provided; and that each director shall be the administrative head of his department and, except as otherwise provided in the charter, shall have the power to appoint, suspend and remove, subject to the provisions of § 44 and the laws of the Commonwealth, any officer, officers, board or boards in his department. Section 44 provides that appointments to any office, offices, board or boards, "except foremen and day laborers" and such offices as pertain to the school committee, shall be subject to provisions therein contained for newspaper advertisements stating any positions to be filled by the appointing director and requesting candidates to submit their candidacies to the director. Each director is required to cause to be kept in his department a record, subject to public inspection, of all persons "appointed and employed" therein (§ 46). The school committee has power to appoint certain officers and assistants "including janitors of school buildings" (§ 57). It is unlawful for any member of the city council or any "employee" of the city to make a contract expressed or implied with the city (§ 37). By § 29, neither the city council nor the school committee shall make or pass any order, resolution or vote appropriating money in excess of $500 or making or authorizing the making of any contract involving a liability on the part of the city in excess of $500, unless the same is proposed in writing and notice is given by the city clerk in at least one daily newspaper of the city, not less than one week before its passage, except an order, resolution or vote, for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency and is passed by a four-fifths vote, and such notice shall be given as aforesaid upon the request of the city council or of the school committee. Upon vote of the city council the mayor shall "sign, seal, execute and deliver in behalf of the city . . . contracts . . . except as is otherwise provided" (§ 32). Sections 29 and 32 are the only charter provisions as to contracts except those found in § 37 relating to the illegality of any contract made in which employees or

officers are concerned, and those respecting contracts made by the purchasing agent (§ 51). The office of purchasing agent is provided for and he is required to purchase all supplies for the city except in case of emergency; but all purchases or contracts for purchase exceeding $25 in amount shall be based upon competition, and no purchases or contracts for purchase shall be made involving the expenditure of more than $25 for any one class of supplies in any month, except by competition. (See St. 1937, c. 216.)

It is a canon of statutory interpretation not to treat any words as superfluous but to give all the language some meaning and not to overemphasize one word or part at the expense of another word or part, to the end that so far as possible the enactment shall constitute a consistent and harmonious whole, capable of producing a rational result in consonance with the presumed intent of the Legislature. *DeBlois* v. *Commissioner of Corporations & Taxation*, 276 Mass. 437, 438. The well established general rule is that when a general power is given or duty enjoined, every particular power, necessary for the exercise of the one, or the performance of the other, is given by implication. *Heard* v. *Pierce*, 8 Cush. 338, 345. The court has no power to supply omissions, if there be any, to statutes. *Morse* v. *Boston*, 253 Mass. 247, 252. If a statute provides for the manner in which and by whom municipal contracts shall be entered into, the mandate is exclusive; parties contracting with the municipality are bound thereby and good faith does not warrant a violation of the statute. *Morse* v. *Boston*, 253 Mass. 247. The officers of cities and towns have only such powers to bind their municipalities by contract as are conferred by the express terms or necessary implications of statutes. Benefit to the city or town is of no consequence in this connection. *Simpson* v. *Marlborough*, 236 Mass. 210, 213. *Safford* v. *Lowell*, 255 Mass. 220, 227. *Higginson* v. *Fall River*, 226 Mass. 423.

In the light of these governing principles, one question for decision is whether Eberhardt had any authority to make a contract with McCabe & Co. for labor in repairing the boilers of the public buildings of the city.

Nowhere in the charter is there express authority given to anyone to employ labor, in the sense of work not performed by appointive officers, except in § 57 relating to janitors of school buildings. (See *Muldoon* v. *Lowell*, 178 Mass. 134, 138; G. L. [Ter. Ed.] c. 43, § 76.) The only other mention of laborers or employees is found in § 44 where "foremen and day laborers" are excepted from certain provisions; in § 46, requiring records to be kept of persons "employed" in departments; and in § 37, prohibiting "employees" from making contracts with the city. The need for laborers to perform the necessary work of such a city as Lawrence is evident. Some one must hire them and to hire a laborer is to make a contract between the laborer and the city, provided there was authority to bind the city.

The charter specifically provides that the city council shall have "full supervision" of the repair of all public buildings (§ 27). The word "full," as used, clearly means entire, complete. "Supervision" is the act of one who supervises and to supervise is to oversee, to have oversight of, to superintend the execution of or performance of (a thing), or the movements or work of (a person); to inspect with authority; to inspect and direct the work of others. Eberhardt, as director of the department of public property, was required to "manage" that department, subject, however, to the "supervision and control" of a majority of the city council, acting jointly, except as otherwise provided (§ 41). To "manage" is to control and direct, to administer, to take charge of, and the words "supervision and control" comprehend an exercise of restraint or direction, of authority over, of domination and command. Then, too, Eberhardt was the "director" and "administrative" head of his department (§ 43). A "director" is one who directs, regulates, orders, controls or conducts, and "administrative" connotes of or pertaining to administration, especially management, as by managing or conducting, directing or superintending, the execution, application or conduct of persons or things.

We think that the city council as a body was not charged by the provisions of § 27 with the specific duty of attending to the details of the repair of public buildings, but that it was

required to see that such work was properly performed. The work was to be done under the management and direction of Eberhardt subject at all times to an exercise of oversight, restraint or direction by a majority of the city council acting jointly (§ 41). There is a direction here for deliberative action on the part of the controlling majority, if any action is to be taken. To be sure, the city council was required to determine the policy to be pursued and the work to be done in each department, but Eberhardt had the full power to carry out that policy and have that work performed in his department, as directed by the council (§ 26). The charter vested in the city council, as a body, the control, direction, general management and supervision not only of the affairs of the city, except for its schools, but also of its officers, including the members themselves of the city council. It went further, however, and carefully and comprehensively subdivided every municipal activity into departments, each to be administered by one of the city council, again excepting schools. To a large extent, in theory at least, this put a director's responsibility to the electorate upon the basis of the manner in which he administered the affairs of his department. We think that Eberhardt, by necessary implication, was authorized to employ such labor as was required to perform the work allotted to his department, subject to charter provisions as to appropriations being available and also to the supervision and control of a majority of the city council. See *Loran* v. *Des Moines*, 201 Iowa, 543. The claim of McCabe & Co. is for labor performed. We see no difference in this case between labor performed by the "employees of the city" who are referred to by the master, and that by McCabe & Co.

It was admitted that no vote had been passed by the city council relative to the authority of Eberhardt to have this labor (of McCabe & Co.) performed or the materials supplied. We understand this admission to relate to the absence of any specific vote authorizing this specific work. We do not think the mere absence of such a vote, in view of the master's findings, is decisive of want of authority in Eberhardt to contract for the labor.

The finding of the master that separate contracts were made for each item of labor cannot be disturbed. If this was a question of law, he decided it correctly. *DeVito* v. *Boehme & Rauch Co.* 239 Mass. 290, 295. From the facts found and the proper inferences to be drawn therefrom, we do not think it can be said that the several requirements of the charter contained in §§ 26, 27, 29 and 41 were violated by the employment of McCabe & Co. to perform the labor on the boilers.

What we have said disposes of the other contentions of the petitioners including the only exceptions which have been argued. We treat the others as waived. *O'Shea* v. *Hurley*, 248 Mass. 191, 194. The petitioners rely upon *Fluet* v. *Eberhardt*, 294 Mass. 408, but the only question for decision in that case was whether a claim for certain building materials furnished the city of Lawrence could be maintained. A schoolhouse roof needed repairs. The same respondent Eberhardt directed his superintendent "to get a roofer and have the roof fixed." As a result a roofer was hired to do the job, and directed to make whatever repairs were necessary. He did this, furnishing the needed materials which amounted to over $600. In the bill submitted to the city the items for supplies and labor were carefully separated. No question was raised as to the labor items. The supplies were not purchased by the purchasing agent. The court held that under the charter the supplies or materials could lawfully have been purchased only by the purchasing agent and that the contract by Eberhardt was without authority on his part and hence did not bind the city. We think the cases are distinguishable.

The result is that the interlocutory and final decrees are

*Affirmed.*