Gershengorn, J.
INTRODUCTION
This action is presently before the court on defendants,’ Richard Wilde, Joseph Impemba, Charles Ferguson, George Judge, and Robert Marrano, as they constitute the Board of Selectmen for the Town of Burlington (Town), motion for summary judgment. *98 Plaintiff, V.C.I., International, Inc. (V.C.I.) brought this action for breach of contract against the Town. Pursuant to a written agreement (contract) between the parties dated September 19, 1989, V.C.I. was to administer the Town’s cross connection control program.
In its complaint, V.C.I. alleges that the Town directed V.C.I. to cease performance under the five-year contract, and that the Town unilaterally terminated the contract. V.C.I. claims $750,000 in damages as a result of the Town’s alleged breach. For the following reasons, the defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
In 1989, the Town commenced a cross connection program. The purpose of the program was to insure that no cross connections exist between the Town’s public water supply system and any waste pipe, sewer, drain, or other unapproved source. According to DEP regulations, the program must include an extensive survey of commercial, industrial, and institutional municipal water users (users) within the Town and further requires that these users install all necessary backflow prevention devices in order to protect the Town’s water supply. This program must be conducted under the supervision of the DEP pursuant to its regulations at 310 C.M.R. 22.22.
On or about September 19, 1989, the Town and V.C.I. entered into a contract for professional services relative to the cross connection program. Pursuant to the contract, V.C.I. was required to supervise the cross connection program and perform or cause to be performed, by contracting plumbers specifically designated by V.C.I. (contractors or designees), certain survey and equipment testing, and otherwise generally assist the Town in the administration of the program. More specifically, the contract provided that all fees charged to water users for surveys, testing, and installation of backflow prevention devices would be paid directly by the individual users to V.C.I., who, in turn, would pay the Town a percentage of fees collected. Under the contract, there was no requirement for the Town to make any payments to V.C.I, directly. In addition, the contract provided that V.C.I. could require individual users to use the services of surveyors and suppliers specifically designated by V.C.I., and to pay those surveyors and suppliers directly for their services.
By letter dated June 27, 1990, DEP informed the Town that it was suspending its grant to the Town of “designee” status, pursuant to 310 C.M.R. 22.22 (10), pending the Town’s clarification of responsibilities under its cross connection program. DEP wanted clarification of the respective responsibilities of the Town and V.C.I. Without the Town having “designee” status, no cross connection control devices could be installed in the Town without prior approval of DEP.
On or about February 6, 1991, DEP again granted the Town "designee” status, subject to certain conditions and recommendations. On or about June 10, 1992, the Town received a cover letter and proposal for continuation of the cross connection program from Beta Programs International, Inc. (BPI). In its June 10, 1992 letter, V.C.I. informed the Town that DEP had reviewed and approved the Town’s backflow program but, as part of the approval, was requiring the Town to make certain changes to the cross connection program which, in turn, would require the Town to make significant changes to its existing contract with V.C.I. Included in the letter to the Town was a detailed program that set forth the changes required.
The Town states that the first significant modification required the Town to bill and collect fees directly from the water users rather than permitting the Town’s contractor to perform the billing and collection functions. This modification, according to Mr. Uly Primeau, President of V.C.I. and B.P.I. (Primeau) was requested by DEP as a result of an opinion from the Chief of the Property Tax Bureau of the Massachusetts Department of Revenue (DOR). That opinion contains the following statement:
Receipts from whatever fees are imposed by boards of water commissioners are municipal revenue and must be paid into the municipal treasury. Such fees cannot be “assigned” or otherwise allocated by the commissioners without an appropriation. G.L.ch. 44, §53. Because such surveys are mandated by state regulation, we believe their cost must be treated as part of the expenses of the water department and funded through the regular budget process.
As a result of the DOR opinion, DEP modified the program by requiring that any charges to water users and funds received which under the contract was handled by the contractors or designers, must now be billed to and received from the users by the Town’s Water Department. In turn, the Town was permitted by the DEP to pay its consultant for services rendered in administering the program. The Town states that the second significant modification to the program by DEP involved a new provision prohibiting any contractor or designee representing the Town who performed surveys or tests from selling backflow prevention devices to any water user in the Town.
By letter dated July 23, 1992, the Town informed V.C.I. that the proposed new contract, reflecting DEP’s required modifications, would have to be put out for bidding under a Request for Proposals, pursuant to the Uniform Procurement Act. Accordingly, the Town issued a Request for Proposals, required by G.L.c. 30B, for consultant services in support of its cross connection program in order to obtain a contract reflecting the policy changes originating from DEP. By letter dated September 14, 1992, V.C.I. informed the Town that it had received the Request for Proposals but was electing not to submit a proposal. On or about September 18, 1992, the bids received for the cross *99 connection program consultant contract were opened. On or about December 29, 1992, the Town entered into a contract with Moore and Kling, Inc., of Northborough, Massachusetts to conduct the Town’s cross connection program.
DISCUSSION
I. The Summary Judgment Standard
Summary Judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.RCiv.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the pariy entitled to judgment as a matter of law. See Cassesso, supra at 422.
II. Breach of Contract Claim
It is well established law in Massachusetts that a contract with a city is not formed until the necessary statutory requirements are fulfilled. Urban Transport, Inc. v. Mayor of Boston, 373 Mass. 693, 696 (1977); Massachusetts General Hospital v. Revere, 385 Mass. 772, 775 (1982), rev’d on other grounds, 463 U.S. 239 (1983). Furthermore, “[p]ersons dealing with a municipality must take notice of limitations of this kind upon the contracting power of the municipality and are bound by them and cannot recover upon contracts attempted to be made in violation of them.” Massachusetts General Hospital, 385 Mass. at 775. (Citations omitted). Massachusetts courts have repeatedly refused to estop municipalities from denying the existence of a contract where statutory requirements were lacking. See United States Leasing Corp. v. Chicopee, 402 Mass. 228, 231-32 (1988), and cases cited therein. This approach serves the "salutary functions of placing cities and towns on a sound financial basis and preventing waste, fraud and abuse.” Id. at 231.
A. G.L.c. 41. §69B
The powers and duties of the water commissioners or selectmen of towns in the Commonwealth are delineated in G.L.c 41, §69B. The statute provides that:
The water commissioners, or the selectmen authorized to act as such, in a town establishing a water supply or water distribution system . . . shall have exclusive charge and control of the water department and water system, subject to all lawful by-laws and to such instructions, rules and regulations as the town may from time to time impose by its vote. They . . . may regulate the use of the water and fix and collect just and equitable prices and rates for the use thereof, and shall prescribe the time and manner of payment of such prices and rates. The income of the water works shall be appropriated to defray all operating expenses, interest charges and payments on the principal as they accrue upon any bonds or notes issued for the purpose of a municipal water supply. If in any fiscal year there should be a net surplus remaining .after providing for the aforesaid charges for that fiscal year, such surplus, or so much thereof as may be necessary to reimburse the town for moneys theretofore paid on account of its water department, shall be paid into the town treasury. If in any fiscal year there should be a net surplus remaining after providing for the aforesaid charges and for the payment of any such reimbursement in full, such surplus may be appropriated for such new construction, extraordinary maintenance, or repairs, as the water commissioners, or selectmen authorized to act as such, with the approval of the town, may determine upon; and in case a net surplus should remain after payment for such new construction, extraordinary maintenance, or repairs, the water rates shall be reduced proportionately. Said commissioners, or the selectmen authorized to act as such, shall annually, and as often as the town may require, render a report upon the condition of the works under their charge, and an account of their doings, including an account of the receipts and expenditures.
Several provisions of Section 69B are relevant. First, the water commissioners are granted the “exclusive charge and control of the water department and water system . . .” Second, the water commissioners are granted the express authority to “regulate the use of the water and [to] fix and collect just and equitable prices and rates for use thereof. ..” Section 69B further mandates that the water commissioners “shall prescribe the time and manner of payment of such prices and rates.”
Physical cross connection with the public water supply must be regulated to prevent contamination of the public water supply. Regulation of cross connections, therefore, falls within the authority of the water commissioners to regulate the use of water. A fee may be properly levied by the water commissioners under Section 69B for the regulation of such cross connections, because such fees are “prices” or “rates” related to the “use” of the system.
*100 However, G.L.c. 41, §69B also provides that “[t]he income of the water works shall be appropriated to defray all operating expenses . . .” Thus, while the water commissioners may regulate the use of the water system (including cross connections) and may levy proper fees for its use, the payment of its operating expenses must be appropriated by the water commissioners. The charges owed to a third party contractor, such as V.C.I., are operating expenses of the water works, payment of which must be received and appropriated by the water commissioners.
This result is consistent with the view expressed in the letter of Harry Grossman, dated October 17, 1989. The requirements of G.L.c. 41, §69B, for payment of fees and their receipt and appropriation by the water works, specifically apply to such water works the requirements that generally apply to all municipal bodies under G.L.c. 44, §53. Therefore, whether or not the DEP or DOR opinions should be given the force of law is not an issue that has to be addressed by this court. The contract between the town and V.I.C. is illegal and unenforceable because it conflicts with G.L.c. 41, §69B.
B. The Uniform Procurement Act
The Town is precluded from modifying its contract with V.C.I. without first complying with the public bidding requirements of the Uniform Procurement Act, G.L.c. 30B. Strict adherence to the statutory bidding procedure has long been required in this Commonwealth. See Morse v. City of Boston, 253 Mass. 247, 252 (1925); Datatrol, Inc. v. State Purchasing Agent, 379 Mass. 679, 701-02 (1980); Modern Continental Construction Co. Inc. v. City of Lowell, 391 Mass. 829, 840 (1984). A failure to comply with statutory bidding requirements will generally render a contract entered into without such compliance void. Phipps Products Corp. v. Massachusetts Bay Transportation Authority, 387 Mass. 687, 691 (1982). “Statutory bidding procedures are designed to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally.” Id. at 691-92. (Citations omitted.)
Section 23 of Stat. 1989, c. 687 provides that:
The provisions of section three of this act [The Uniform Procurement Act] shall apply only to contracts solicited or entered into after the effective date of this act. Any renewal, extension, modification, or exercise of any option under any contract after the effective date of this act shall be subject to the provisions of said section three . . .
Because the contract between the Town and V.C.I. was illegal and unenforceable under G.L.c. 41, §69B, it required substantial modifications. These changes, which were conditions of DEP’s approval of the program, could not be implemented by the Town without major modifications to the Town’s existing contract with V.C.I., because the existing contract was premised on the contractors or designees billing and collecting all fees from water users and then disbursing a portion to the Town, and a portion to V.C.I. based on a fee schedule. Most significantly, because the existing contract did not require the Town to make any payments to V.C.I., there was no appropriation by Town Meeting required under it.
Under the modifications to the program required by G.L.c. 41, §69B,[2] the Town would in the future be required to appropriate funds to pay the contractors and the consultant their portion of the fees collected by the Town from the water users under the new program. Thus, it became subject to the public bidding requirements of the Uniform Procurement Act. G.L.c.30B; see also Edwards v. City of Boston, 408 Mass. 643 (1990). Because V.C.I. refused to submit a bid, it cannot claim any right to the modified contract.
C. Severability Clause
V.C.I. argues that the contract should be salvaged because of a severability clause in the contract which provides that:
Should any provision [or] part thereof of this agreement be held illegal or unenforceable, then such provision or part should be deemed stricken and the remaining provisions and parts thereof shall remain in full force and effect.
This court agrees that if part of a contract can be separated from that part which is void and carried into effect, it may be done. Cadillac Auto Co. of Boston v. Eugeian, 339 Mass. 26 (1959). However, in this contract, the original agreement of September 19, 1989 required water users, individually, to pay fees for survey, testing and installation directly to V.C.I., who in turn would pay the town 25% of the fees collected. The contract change proposed by B.P.I. on June 10, 1992 requires that 1) the entire cost of the program be funded by the water department and 2) all charges and funds received must be billed and received directly by the water department.
V.C.I. would have earned the money it demands in its complaint by collecting the fees directly from the water users. This role comprised most ofV.C.I.’s duties under the contract. This court concludes that the fundamental realignment of duties, responsibilities and cashflow substantially modifies the contract within the meaning of Stat. 1989, c. 687, §23.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’, Richard Wilde, Joseph Impemba, Charles Ferguson, George Judge, and Robert Marrano, as they constitute the Board of Selectmen for the Town of Burlington, motion for summary judgment against plaintiff, V.C.I. is ALLOWED.

These modifications were also required as a condition of DEP approval, and as proposed by B.P.I.’s June 10, 1992 letter.